UNITED STATES of America, Plaintiff–Appellee,

v.

Raul Martin FRANCO–TORRES and Manuel Velo–Gonzalez, Defendants–Appellants.

No. 88–1382
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 24, 1989.

Lucian Campbell, Federal Public Defender, William R. Maynard, Asst. Federal Public Defender, El Paso, Tex., for Franco–Torres.

Ricardo D. Gonzalez, El Paso, Tex., (court-appointed), for Velo–Gonzalez.

LeRoy M. Jahn, Michael R. Hardy, Asst. U.S. Attys., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Raul Martin Franco–Torres and Manuel Velo–Gonzalez each pled guilty to conspiring to import more than one hundred kilograms of marijuana into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963. On appeal, they challenge only their sentences. Both defendants contend that the sentencing guidelines are unconstitutional. Both also contend that they should have received reductions to their offense level because they accepted responsibility for their crimes. Velo–Gonzalez contends he should have received an additional reduction to his offense level because he was a minimal, rather than minor, participant in his crime. Franco–Torres contests the district court's findings that he possessed a firearm during commission of the offense, and that he obstructed the administration of justice. Finding no error in the sentences imposed, we affirm.

I

Border patrol agents found some duffel bags containing marijuana. They set up a stake out. Velo–Gonzalez and Franco–Torres entered the area in a white van. The two men loaded the duffel bags into the van. Soon thereafter, the agents saw the van leave the area. Velo–Gonzalez was driving, and Franco–Torres was his passenger. The agents began following, and the

suspects spotted Agent Mario Esparza, who was driving a marked Border Patrol car, behind them. They tried to escape, and a high speed chase was had. The van eventually ran into a wall. Both suspects fled on foot. The agents followed on foot, and caught the suspects. Upon questioning, Velo–Gonzalez and Franco–Torres said that they were to receive $700 and $500, respectively, for transporting contraband. The duffel bags were found to contain more than 500 pounds of marijuana.

The defendants and the government vigorously dispute what happened while the agents pursued the defendants on foot. Agent Esparza testified at the sentencing hearing that defendant Franco–Torres had shot at him. Earlier, however, when the court accepted the defendants' pleas, the prosecutor had said that one defendant shot at the agents, but that the agents could not identify which defendant had done so. Both defendants, on the other hand, denied that they possessed guns during the crime. Neither defendant possessed a gun at the time the two were taken into custody.

The chase took place close to midnight. The area of the chase was searched at the time of the chase and again the next morning, but no gun was found.

## II

Both defendants challenge the constitutionality of the sentencing guidelines. Their argument is foreclosed by the Supreme Court's recent decision in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

## III

■ Both defendants contend that they had accepted responsibility for their crimes, and that the district judge should therefore have reduced their offense levels by two points. *See* Guideline 3E1.1. Whether or not a defendant has accepted responsibility is a factual question, depending largely upon credibility assessments. With respect to such assessments, we defer to the conclusions of the sentencing judge. We will therefore affirm the sentencing judge's findings unless they are "without foundation." *United States v. Thomas*, 870 F.2d 174, 177 (5th Cir.1989).

In this case, the sentencing judge clearly disbelieved the testimony given by both defendants at the sentencing hearing. The judge found that they had not accepted responsibility for their crimes. We see no reason to conclude that these findings were "without foundation."

## IV

■ The district court determined that Franco–Torres had a gun during commission of the crime, and that Franco–Torres fired at Agent Esparza. Franco–Torres contends that this factual finding was clearly erroneous. The finding that Franco–Torres possessed a gun formed the basis for a two-point increase to his offense level under § 2D1.4. Section 2D1.4 provides that a defendant convicted of a conspiracy involving a controlled substance is to receive the sentence that would have applied had the conspiracy achieved its object. Section 2D1.1 specifies the sentence applicable to the object crime, and § 2D1.1(b)(1) provides for a two-point increase to the offense level if the defendant possessed a firearm during commission of the crime.

The judge's finding that Franco–Torres fired the gun and disposed of it formed the basis for the judge's determination that Franco–Torres had obstructed justice. *See* Guideline 3C1.1.

At the sentencing hearing, Agent Esparza testified, under oath and subject to cross-examination, that Franco–Torres had shot at the agent during the chase. The agent said that he was climbing a wall that separated him from the defendant when the defendant fired the shot. Agent Esparza said he was able to tell which defendant had fired the shot because of the relative positions of the two, and because he had been shot at before.

On cross-examination, the attorney for Franco–Torres brought out that Agent Esparza had not been shot at for three years;

that there were various structures in the area which might have created echos and so misled Agent Esparza about the direction of the shot; and that Agent Esparza had not, in his original report on the incident, specified which defendant had shot at him. Franco–Torres testified, also under oath and subject to cross-examination, that he had no gun and had fired no shots. Franco–Torres said that the only shots fired came from the guns of Border Patrol agents. The evidence brought out at the sentencing hearing also showed that several agents had searched the area for a gun, but none was ever found.

The sentencing judge chose to believe the agent's testimony. The judge said, "I do find as a fact that you [Franco–Torres] had a firearm with you and that you attempted to fire it at the pursuing officer. He wouldn't have to be any genius to know that someone was shooting and that somebody was shooting at him."

The firearm issue turns upon the credibility of Agent Esparza's testimony. As the guidelines specifically require, we defer to the sentencing judge's credibility determinations. *See* 18 U.S.C. § 3742(d). The issues were well-developed at the sentencing hearing, and the judge had a full opportunity to consider the competing accounts. We do not review *de novo* but ask only whether the trial judge's findings are clearly erroneous. They are not, and we will not disturb them.

## V

Franco–Torres contends that even if the judge's factual findings are correct, those findings do not support a conclusion that Franco–Torres obstructed the administration of justice. Under § 3C1.1, the sentencing judge is directed to increase the defendant's offense level by two if "the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." The commentary provides that this guideline is intended to provide "a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding." As examples of acts justifying application of this section, the guideline lists the destruction of evidence, the furnishing of false statements to the probation office or sentencing judge, and the intimidation of witnesses.

Whether or not a defendant has obstructed the administration of justice is a factual question, and the district court's resolution of the question enjoys the protection of the clearly erroneous standard. *See United States v. Mejia–Orosco*, 868 F.2d 807 (5th Cir.1989) (district court's conclusion as to "manager status" enjoys protection of the clearly erroneous standard); *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989) (district court's conclusion as to "minor participant status" enjoys protection of the clearly erroneous standard); *United States v. Thomas*, —— F.2d —— (5th Cir. 1989) (district court's conclusion as to "acceptance of responsibility" enjoys protection of the clearly erroneous standard).

We therefore ask only whether there was sufficient evidence in the record to permit the sentencing judge to conclude that Franco–Torres obstructed the administration of justice. Franco–Torres contends that efforts to evade arresting officers cannot, without more, constitute the obstruction of justice within the meaning of § 3C1.1. We find it unnecessary to pass upon the truth of that argument, for Franco–Torres did more than flee arrest.

■ The judge clearly believed the testimony of Agent Esparza. Agent Esparza's testimony indicated that Franco–Torres had a gun while he was being chased, and that Franco–Torres threw away the gun to hide it from the investigating officers. The testimony also indicated that Franco–Torres had shot at Agent Esparza, who was not only a police officer but a witness to the crime. This evidence suffices to support the judge's finding.

Application Note 2 to § 3C1.1 does not help Franco–Torres. That note says, "In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant."

We do not believe that this note requires the sentencing judge to believe the defendant whenever he denies that he hid evidence, or shot at witnesses. To construe the note in that way would effectively enable every defendant to nullify its application by self-serving testimony. Instead, we believe the note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction. Such uncertainties may arise when the judge is unsure about which witness to believe, or when the prosecution has failed to procure available evidence crucial to the resolution of a controversy. *See U.S. v. Ruelas–Armenta,* 684 F.Supp. 1048, 1050 (C.D.Cal.1988) (declining to apply § 3C1.1 when court had not received needed evidence). This proviso does not help Franco–Torres, for, as the remarks already quoted make clear, the sentencing judge firmly believed that Agent Esparza was telling the truth, and that Franco–Torres was not.

### VI

The district court gave each defendant a two-point reduction to his offense level on the ground that each defendant was a minor participant, but more than a minimal participant, in the crime. *See* Guideline 3B1.2. Velo–Gonzalez contends that he is entitled to a four-point, rather than two-point, deduction, because he was involved in the crime only as a courier or "mule." We have held, however, that a defendant may be a courier without being a minimal participant or, indeed, even a minor participant. *Buenrostro,* 868 F.2d at 138.

 Minimal participant status is not a legal conclusion derived by applying the guidelines to factual determinations. It is itself a factual determination, and enjoys the protection of the "clearly erroneous" standard. That factual determination turns upon culpability, not courier status. As we said in *Buenrostro,* a defendant may be a courier without being substantially less culpable than the average participant. Culpability is a determination requiring sensitivity to a variety of factors.

In this case, the district judge found that the defendants were less culpable than most participants, and allowed a reduction in offense level commensurate with his assessment of their culpability. He also found, however, that the defendants were not "minimal participants." The record provides clear support for his conclusions. The defendants transported a substantial quantity of marijuana. Following *Buenrostro* we affirm on the ground that the district judge's factual findings were not clearly erroneous.

The judgment of the district court is, in all respects,

AFFIRMED.