887 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee
v.
Virgil Graham AVERY, Defendant-Appellant
 No. 89-1140.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1989.
 
 Before MERRITT and RYAN, Circuit Judges and JOHN W. PECK, Senior Circuit Judge
 MERRITT, Circuit Judge.
 
 
 1
 Defendant, Virgil Graham Avery, appeals the sentence imposed by the District Court after a jury verdict finding Avery to be a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g).[1] The issue in this case is whether the District Court imposed a proper sentence pursuant to the United States Sentencing Commission Guidelines. Finding that the District Court's sentencing determination was not "clearly erroneous," we affirm the District Court's sentencing determination.
 
 
 2
 In July, 1988, Avery was indicted for being a felon in possession of four firearms found at 4002 Trumbull Street. The charge arose out of the execution of a search warrant which had been obtained on the basis of a confidential informant who allegedly had purchased cocaine on four occasions from within 4002 Trumbull. Sgt. Louis Weller of the Flint Police Department witnessed the confidential informant enter the house and then return with a small quantity of cocaine. After the fourth purchase, Sgt. Weller obtained a warrant to search the residence for cocaine. During the search, the police discovered Avery and Undine Richardson. The police also discovered four guns, three balance scales, approximately 75 plastic bags resembling those used to package the cocaine bought by the informant, and other drug paraphernalia.
 
 
 3
 Sgt. Weller arrested Avery and, during a body search, discovered a small bag of cocaine and $308 in cash, including $135 in bills with serial numbers matching those given to the informant earlier that same day. Avery was given his Miranda warnings. Sgt. Blough testified that Avery admitted to him that he lived with Undine Richardson at 4002 Trumbull. At trial, Avery admitted that he owned the residence but testified that he was renting it to Undine Richardson. Richardson also testified that she was renting the house from Avery.
 
 
 4
 The Government called Sgt. Weller to testify that during his 10-occasion surveillance of 4002 Trumbull, he saw either Avery or his car located at the residence. Based on this evidence, a jury found Avery guilty of being a felon in possession of a firearm.
 
 
 5
 Subsequently, the District Court sentenced Avery to 37 months in prison and 3 years of supervised release, within the range established under the United States Sentencing Commission Guidelines for an offense level 13 and a criminal history category of V. Avery does not dispute the criminal history category, but rather appeals the offense level used by the District Court in making its sentencing determination.
 
 
 6
 I. WILLFUL OBSTRUCTION OF THE ADMINISTRATION OF
 
 
 7
 JUSTICE--SECTION 3C1.1 OF U.S. SENTENCING GUIDELINES
 
 
 8
 Avery does not challenge the District Court's determination that, under Sec. 2K2.1, the possession of firearms by a prohibited person carries with it a base offense level of 9. Avery also agrees to a one level increase based on the fact that one gun was stolen and another gun had an obliterated serial number. Sec. 2K2.1(b)(1). Avery, therefore, contends that the highest base offense level should have been 10, producing a guideline range of between 21-27 months (as opposed to the 30-37 month range corresponding to a base offense level of 13). See Sentencing Guidelines, Chapter 5.
 
 
 9
 The District Court, however, increased the base offense level by another two levels pursuant to Sec. 3C1.1 of the Sentencing Guidelines. This section provides:
 
 
 10
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.
 
 
 11
 The Commentary to Sec. 3C1.1 states that this section is meant to increase the sentence of a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding. Application Note 1(c) to Sec. 3C1.1 specifically provides that testifying untruthfully as to a material fact during a trial may be a basis for applying this two level adjustment. "Suspect testimony," however, should be construed in favor of the defendant. Section 3C1.1, Application Note 2. Interpreting Application Note 2, the Fifth Circuit in United States v. Franco-Torres, 869 F.2d 797, 801 (5th Cir.1989), stated that it:
 
 
 12
 [did] not believe that this note requires the sentencing judge to believe the defendant whenever he denies that he hid evidence, or shot at witnesses. To construe the note in that way would effectively enable every defendant to nullify its application by self-serving testimony. Instead, we believe the note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction.
 
 
 13
 The trial judge saw and heard all the evidence and observed the demeanor of the witnesses on direct and cross-examination. In addition, despite testimony by Avery and Richardson that Avery did not live at 4002 Trumbull where the four firearms were found, the jury found Avery guilty beyond a reasonable doubt. Thus, the jury must have concluded that Avery and Richardson's testimony was false. These factors clearly support a finding that the judge had a "firm conviction" that Avery had testified falsely concerning his residence at 4002 Trumbull.[2]
 
 
 14
 This Court's review of the District Court's findings of fact and application of Sec. 3C1.1 is governed by the "clearly erroneous" standard. 18 U.S.C. Sec. 3742(e); United States v. Perez, 871 F.2d 45, 47 (6th Cir.1989), cert. denied, 109 S.Ct. 3227 (1989). A succinct definition of the "clearly erroneous" standard was enunciated in Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988) (citations omitted), in which the court stated that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In light of this standard, as well as the jury verdict finding Avery guilty beyond a reasonable doubt, the District Court's determination that Avery lied on the stand in violation of Sec. 3C1.1 was not "clearly erroneous."
 
 
 15
 II. PATTERN OF CRIMINAL CONDUCT FROM WHICH DEFENDANT DERIVED
 
 
 16
 A SUBSTANTIAL PORTION OF HIS INCOME--SECTION 4B1.3
 
 OF U.S. SENTENCING GUIDELINES
 
 17
 Section 4B1.3, captioned "Criminal Livelihood," provides that "[i]f the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13, unless Sec. 3E1.1 (Acceptance of Responsibility) applies ..." The Commentary to Sec. 4B1.3 defines "pattern of criminal conduct" as "planned criminal acts occurring over a substantial period of time" which "may involve a single course of conduct or independent offenses." Section 4B1.3, Application Note 1. Avery appeals the District Court's finding that he derived a "substantial portion of his income" from his criminal conduct.
 
 
 18
 At the sentencing hearing, Avery testified that he had been working as a mechanic at an automobile repair shop. Avery, however, failed to introduce any corroborating proof as to his employment status.
 
 
 19
 From this evidence, the District Court found that Avery had no legitimate source of income during the four-month period in question. Applying the "clearly erroneous" standard set forth in Archer as it applies to 18 U.S.C. Sec. 3742(e), the District Court's failure to find that Defendant had a legitimate source of income does not leave this Court with "the definite and firm conviction that a mistake has been committed." Archer, 853 F.2d at 499.
 
 
 20
 Avery also alleges that there was insufficient proof of his income requirements submitted to the District Court from which the court could make a quantitative analysis as to the "substantial portion" requirement of Sec. 4B1.3. Proof of the "substantial portion" requirement, however, can be extracted from the record. First, the evidence adduced at trial plainly suggests that Avery had very little income. His payments on the land contract and utilities for 4002 Trumbull were made with rent checks from the Department of Social Services, paid on behalf of his tenant, Undine Richardson. While Avery alleges that he was employed as a mechanic, he offered no proof to verify his claim. The cocaine sales made by Avery to the confidential informant amounted to between $100 and $135 for each sale. The four firearms, 75 plastic bags, three triple-beam scales and other drug paraphernalia found in 4002 Trumbull the day the search warrant was executed clearly support a finding that sales to the confidential informant were merely a small part of a much larger cocaine sales operation. Based on this evidence, the District Court's determination that Avery's firearm possession was part of a pattern of illegal cocaine sales from which Avery derived a substantial portion of his income is not "clearly erroneous." See Archer, 853 F.2d at 499; 18 U.S.C. Sec. 3742(e).
 
 
 21
 Accordingly, the District Court's sentencing determination is AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 922(g) provides:
 It shall be unlawful for any person--
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 * * *
 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition....
 
 
 [2]
 Avery also argues that the District Court improperly used "non-testimonial" evidence in violation of Application Note 2. This "non-testimonial" evidence, the informant's hearsay statements, were not considered in conjunction with Sec. 3C1.1, but rather in conjunction with the criminal livelihood issue in Sec. 4B1.3. See Sentencing Transcript at 6-9