151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Anthony COWAN, a/k/a Lizzy, Defendant-Appellant.
 No. 97-2900.
 United States Court of Appeals, Seventh Circuit.
 Argued May 11, 1998.
Decided August 5, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 95 CR 40038 Michael M. Mihm, Chief Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JOEL M. FLAUM, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Anthony Cowan of conspiring to distribute and possess with the intent to distribute cocaine and cocaine base. The district court sentenced him to 360 months' imprisonment. Cowan appeals only his sentence. We affirm.
 
 
 2
 Around June 1992, Anthony Cowan met Leslie Teague, who would later become his partner in distributing cocaine. The relationship formed because both men had been members and leaders of the "Vice Lords" street gang (Teague was at the "Five Star Universal League" seniority level and Cowan was at the "Three Star" level), and they decided to meet to discuss organizing the Vice Lords in their new neighborhood.
 
 
 3
 Whether the two ever organized the neighborhood is unclear from the record, but what is clear is that by the summer of 1992 Teague was involved in the drug business in Moline, Illinois, selling cocaine that he obtained in Chicago, and by late 1993 Teague had asked Cowan to be his partner in the business. Teague also recruited several others into the conspiracy, while at the same time diminishing his own role, apparently because he feared that the police were on to him.
 
 
 4
 He was right. The government eventually indicted Teague, Cowan, and other co-conspirators (including Ramsey Vesey) on various federal drug offenses. However, rather than go to trial, Teague pleaded guilty and turned state's evidence against Cowan and Vesey, who both pleaded not guilty. Teague and several other co-conspirators testified against Cowan at his federal trial for conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of §§ 841(a)(1) and 846. Based on the co-conspirators' testimony and other evidence, including expert testimony by federal agents, records of telephone calls between the co-conspirators, and computer logs, a jury convicted Cowan. Following a sentencing hearing at which Cowan challenged various components of the Presentence Investigation Report, the district court sentenced him to 360 months in prison.
 
 
 5
 In appealing his sentence, Cowan argues that the district court mistakenly set his base offense level at 38 after improperly finding him responsible for 10.5 kilograms of powder cocaine and 3.4 kilograms of crack (which the court converted for sentencing purposes to a total drug marijuana-equivalent weight of 72,728 kilograms). We review the district court's factual findings as to the amount of drugs attributable to a defendant for clear error, United States v. Magana, 118 F.3d 1173, 1205 (7th Cir.1997), and such a finding is not clearly erroneous "unless upon review [we are] left 'with a definite and firm conviction that a mistake has been committed.' " United States v. Herrera, 54 F.3d 348, 356 (7th Cir.1995) (internal citations omitted). Moreover, "if two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous." United States v. Taylor, 72 F.3d 533, 546 (7th Cir.1995).
 
 
 6
 The district court did not commit clear error in calculating the quantity of drugs involved. Many of Cowan's co-conspirators testified about the amount of drugs they delivered to Cowan; this evidence was more than sufficient to support the district court's finding. While Cowan argues that his co-conspirators were "unreliable sources" (pointing to the "grossly suspect testimony of government witnesses Teague and Donelson"), we leave such credibility determinations to the district court. Here the district court found these witnesses "gave credible testimony" and that the weights involved were accurate.
 
 
 7
 As to the weights, Cowan claims that computer records maintained by one co-conspirator contradicted that co-conspirator's trial testimony regarding the drug quantities. But that same witness explained that he was inexperienced on the computer and failed to keep the records accurately. Once again, from there it was up to the district court to judge credibility; he did and found the government's witnesses more credible, and that determination is not clear error.[1] See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").
 
 
 8
 Cowan also challenges the district court's two-level upward adjustment assessed pursuant to Sentencing Guideline § 3C1.1. That section provides: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." Application Note 3 explains that "committing, suborning, or attempting to suborn perjury" are "types of conduct to which this enhancement applies." And Application Note 1 provides that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant."
 
 
 9
 The district court enhanced Cowan's sentence pursuant to section 3C1.1 after finding that he perjured himself five times during trial, beginning with his testimony that any discussions he had with a government witness concerned the purchase of a car. That government witness, however, testified that Cowan bought 10 ounces of cocaine from him on four separate occasions. Second, Cowan testified he never took cocaine to his former girlfriend's apartment; she testified he did. Third, Cowan testified that he never saw his co-defendant do anything to facilitate the sale of illegal drugs. Other testimony, however, detailed drug transactions between Cowan and his co-defendant. Fourth, Cowan testified that Teague paid him $10,000 in cash for rap music performances, but Teague testified that it was for drugs. Finally, Cowan testified that Teague never telephoned him about scheduling drug deliveries and receiving payments, but again Teague testified that Cowan paged him whenever he wanted more drugs and this testimony was verified by other government evidence.
 
 
 10
 In challenging the district court's findings of perjury, Cowan argues that the district court erred by "fail[ing] to view Cowan's testimony in a light most favorable to Cowan, ..." as required by Application Note 1. In support of his position, Cowan cites the following comments made by the district court:
 
 
 11
 I certainly have a duty, as I said earlier, to consider their testimony with caution and great care; that is, in the same way the jury is expected to consider it. The jury rejected the defendant's version of the facts.
 
 
 12
 I would state parenthetically, I don't believe your statement that I have a duty to view Mr. Cowan's testimony in the light most favorable--or anyone else's--in the light most favorable to him is actually correct. I certainly have a duty to consider this with caution. But if I viewed it in the light most favorable to him, that would mean I would have a duty to believe his version and I'm not under that duty I don't believe.
 
 
 13
 Cowan argues that these comments demonstrate that the district court ignored Application Note 1's mandate. We disagree. The district court was merely elaborating on the correct interpretation of that Application Note: "[T]he note simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." United States v. Vaquero, 997 F.2d 78, 85 (5th Cir.1993) (quoting United States v. Franco-Torres, 869 F.2d 797, 801 (5th Cir.1989)). The "light most favorable" mandate of Note 1 does not require a court to accept the defendant's version of the events. We have stated as much. See United States v. Jones, 950 F.2d 1309, 1316 (7th Cir.1991) ("If this Application Note were applied in the fashion that [the defendant] suggests, the court would never apply the enhancement, for viewing the evidence in the manner [the defendant] proposes would mean always resolving swearing contests in favor of the defendant."). Because the above excerpt does nothing more than make an observation we ourselves have made, Cowan cannot prove any mistake of law. We therefore review the district court's assessment for clear error. Id. There was none. The district court evaluated Cowan's testimony and justifiably concluded that Cowan had perjured himself not once but five times. An enhancement here was clearly warranted.
 
 
 14
 Cowan presents two additional arguments, neither of which merit much discussion. He contends that the district court erred in sentencing him for both cocaine and cocaine base because the jury's verdict did not specify whether it found him guilty of conspiring to distribute one or the other. In an opinion issued shortly before oral argument, the Supreme Court considered and rejected this same argument in United States v. Edwards, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). Edwards, like this case, involved an indictment charging drug offenses involving both cocaine and cocaine base. And like this case, the jury in Edwards handed down a general verdict of guilty. The Supreme Court upheld the conviction and sentence, holding that "the judge was authorized to determine for sentencing purposes whether crack, as well as cocaine, was involved in the offense-related activities." Id. at 1477. Edwards therefore forecloses Cowan's argument.[2]
 
 
 15
 Lastly, Cowan finds the disparity in penalties between cocaine base and powder cocaine to be unconstitutional. This court has consistently rejected this argument, again recently in United States v. Richardson, 130 F.3d 765, 781 (7th Cir.1997), and Cowan fails to present any arguments (other than that the decision is wrong) for overturning this precedent, which we decline to do.
 
 
 16
 AFFIRM.
 
 
 
 [1]
 Cowan also refers us to comments made by the district court--that the sentencing structure and its reliance on co-conspirator's testimony was flawed--to argue that the district court erred in relying on such testimony. Surely, these comments did not give much comfort to Cowan. But the district court's extraneous comments, if anything, cut against Cowan's argument, because after criticizing the sentencing structure, the district court explained that these "flaws" caused him "to be very conservative about what is counted in drug weights."
 
 
 [2]
 Edwards recognized that a different outcome may be appropriate if the sentence imposed exceeded the maximum that the statute permits for a cocaine-only conspiracy, or if it were possible to argue that the crack-related activities did not constitute part of the same course of conduct. Id. at 1477-78. We raised the issue of Edwards at oral argument, but Cowan did not claim that the facts here involve either of these scenarios