**UNITED STATES of America, Appellee,**

**v.**

**Johnny Rafael BATISTA–POLANCO, Defendant, Appellant.**

**No. 89–2197.**

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1990.

Decided Feb. 28, 1991.

---

David N. Cicilline, Providence, R.I., for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, Providence, R.I., for appellee.

Before CAMPBELL, and CYR, Circuit Judges, and TIMBERS,* Senior Circuit Judge.

CYR, Circuit Judge.

Johnny Rafael Batista–Polanco appeals his convictions and sentences for possessing and conspiring to possess one hundred or more grams of heroin for distribution in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) and 846. We affirm.

## FACTS

Appellant and six codefendants were indicted by a federal grand jury on evidence obtained during the execution of a search warrant at an apartment in Providence, Rhode Island.[1] Acting on information from a confidential informant that heroin was being packaged at the Providence apartment, the police maintained surveillance throughout the early morning hours of April 26. The search party forcibly entered the apartment at approximately 10:30 a.m. and immediately encountered a large kitchen table laden with over fifteen hundred packets filled with heroin, an assortment of heroin milling and packaging paraphernalia, and some bulk heroin. Five chairs and a makeshift seat were arranged around the kitchen table; jackets and sweaters were draped on some of the chairs. More than seventeen hundred packets of heroin were found in a bag on the kitchen floor; another three thousand packets were discovered elsewhere in the apartment. Six men were found inside the apartment, including appellant Batista–Polanco who was in the living room with his cousin.

After the six men were arrested, and assembled in the living room, their *Miranda* rights were explained in Spanish. After all arrestees acknowledged an understanding of their rights, DEA Special

---

* Of the Second Circuit, sitting by designation.

1. Five codefendants were found in the apartment with the defendant. Another codefendant, the lessee of the apartment, was not present when the search warrant was executed.

Agent Baggs asked if anyone wished to make a statement; none of the arrestees either responded in the affirmative or requested an attorney. As appellant was being escorted from the apartment, through the kitchen, one of the detectives who was escorting him indicated to Agent Baggs that he thought appellant wanted his sweater. Baggs immediately asked the appellant in Spanish either "where is [the sweater]?" or "where were you sitting?" Appellant indicated that a sweater on one of the chairs beside the kitchen table belonged to him, and Agent Baggs gave him the sweater.

At the bench trial, appellant testified that his presence in the apartment was entirely innocent and that he had been waiting there merely to borrow his cousin's car. Although appellant admitted awareness that heroin was being packaged in the kitchen, he denied knowing or speaking with anyone at the kitchen table, other than his cousin, and he claimed that he neither sat in the kitchen nor assisted with the heroin operation in any way. Appellant claimed simply to have left his sweater on his cousin's chair when he went into the living room to wait. He testified that he had been in the apartment only forty-five minutes by the time the police arrived. The government rebutted appellant's testimony with the testimony of the officer who had maintained constant surveillance outside the apartment between 8:15 and 10:30 a.m. on April 26. The officer testified that the appellant did not enter the apartment during the surveillance.

The district court characterized Batista–Polanco's testimony as "incredible" and found him guilty on both counts. At sentencing, the court increased appellant's base offense level by two points, on the ground that appellant had testified falsely as to the length of time he remained in the apartment. The court rejected the contention that appellant was a "minor participant" and sentenced him to two concurrent prison terms of eighty months, followed by concurrent five year terms of supervised release.

Batista–Polanco challenges his convictions and sentences on the following grounds: the insufficiency of the evidence; the withholding of the identity of the confidential informant; the inadmissibility of the statement concerning the sweater; and, finally, the allegedly unlawful two-point increase of appellant's base offense level for obstruction of justice and the refusal to decrease appellant's base offense as a "minor participant."

## DISCUSSION

*Sufficiency of the Evidence*

The challenges to the sufficiency of the evidence and to the denial of the motion for judgments of acquittal raise a single issue. *See United States v. St. Michaels Credit Union*, 880 F.2d 579, 584 (1st Cir.1989); *United States v. McNatt*, 813 F.2d 499, 502 (1st Cir.1987). We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See United States v. Passos–Paternina*, 918 F.2d 979, 983 (1st Cir.1990) (sufficiency of evidence); *United States v. Sanchez*, 917 F.2d 607, 610 (1st Cir.1990) (same); *United States v. Smith*, 680 F.2d 255, 259 (1st Cir.1982) (motion for judgment of acquittal), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. *Passos–Paternina*, 918 F.2d at 983; *Sanchez*, 917 F.2d at 610; *McNatt*, 813 F.2d at 502. The evidence may be entirely circumstantial, *United States v. Boylan*, 898 F.2d 230, 242 (1st Cir.1990); *United States v. Mount*, 896 F.2d 612, 615 (1st Cir.1990), and need not exclude every reasonable hypothesis of innocence, *United States v. Laboy*, 909 F.2d 581, 588 (1st Cir.1990); *Mount*, 896 F.2d at 615; that is, the factfinder may decide among reasonable interpretations of the evidence, *Laboy*, 909 F.2d at 588; *United States v. Blair*, 886 F.2d 477, 478 (1st Cir.1989).

**18**

*"Mere Presence"*

■ Appellant neither denies being at the apartment while the large scale heroin packaging operation was in process nor disputes the existence of a conspiracy among the other persons present, insisting instead that evidence of "mere presence" is insufficient to support the conviction, *see, e.g., United States v. Mehtala,* 578 F.2d 6, 9 (1st Cir.1978), and that these verdicts are the product of "speculation and conjecture" and guilt by association. We do not agree.

The circumstantial evidence raises reasonable inferences sufficient to refute the claim of mere presence at the crime scene. Appellant admitted that he remained for at least forty-five minutes [2] in an apartment conspicuously strewn with evidence of a large-scale heroin packaging operation. In these circumstances we cannot accept the hypothesis that participants in a distribution scheme would permit a noncontributing interloper to remain for an extended period of time in a small apartment while their conspicuous criminal conduct continued unabated. "[S]uch is not normally the conduct that one would expect of conspirators engaged in conduct which by its nature is kept secret from outsiders." *Smith,* 680 F.2d at 260. "Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings." *Id.; see also United States v. Staten,* 581 F.2d 878, 885 (D.C.Cir.1978) (presence in small apartment replete with indicia of ongoing drug-distribution enterprise in open view "could rationally have been viewed as a privilege reserved exclusively for participants"). As we frequently recognize, the factfinder may fairly infer, as did the district court in the present case, that it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes.

*See United States v. Passos-Paternina,* 918 F.2d at 985 ("understanding of human behavior" may ground reasonable inference from circumstantial evidence). *United States v. Pacheco,* 794 F.2d 7, 11 (1st Cir.1986) (such criminal conduct "by its nature is kept secret from outsiders...."); *see also United States v. Cuevas-Esquivel,* 905 F.2d 510, 515 (1st Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990). *Compare Mehtala,* 578 F.2d at 9; *United States v. Francomano,* 554 F.2d 483, 487 (1st Cir.1977).

■ The inference that Batista-Polanco was a participant in the heroin packaging operation was strongly supported as well by reasonable implication from the fact that the kitchen table at which the heroin was packaged was surrounded by six seats—one a makeshift seat consisting of an overturned bucket with a cushion. It is difficult to resist the reflexive inference that the sixth seat was devised to enable all six men, including appellant, to sit at the kitchen table and to participate in the heroin packaging.[3] Finally, the district court's well-supported finding that appellant gave materially false testimony concerning the duration of his stay in the apartment provided a basis for discrediting other exculpatory testimony given by Batista-Polanco in his own defense. *See, e.g., United States v. Jimenez-Perez,* 869 F.2d 9, 11 (1st Cir. 1989); *United States v. Quejada-Zurique,* 708 F.2d 857, 861 (1st Cir.), *cert. denied,* 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983).

Although wholly circumstantial, the evidence was sufficient to support appellant's conviction on each count.

■ As to the substantive offense, the government was required to prove that appellant possessed one hundred or more grams of heroin, with intent to distribute. Appellant does not dispute that the sheer scale of the heroin packaging operation was sufficient to support a reasonable inference that the heroin was intended for

---

**2.** The district court supportably credited the testimony of the surveillant and concluded that appellant remained in the apartment for more than two hours.

**3.** The inference is strengthened by the circumstantial evidence that a makeshift sixth seat was placed at the kitchen table even though there were other places to sit in the apartment.

distribution, but he contends that the government failed to prove possession. We disagree. The circumstantial evidence and related inferences were sufficient to place appellant at the kitchen table on which the heroin was packaged, thereby establishing joint constructive possession of the 100.86 grams of 68% pure heroin on the kitchen table. *See United States v. Latham,* 874 F.2d 852, 861 (1st Cir.1989) ("constructive possession" shown where defendant exercises "dominion, or control over the drug to be distributed"); *Santiago v. United States,* 889 F.2d 371, 376 (1st Cir.1989) (constructive possession may be "joint").

■■■■ "A criminal conspiracy is a tacit or explicit agreement to perform an unlawful act or omit one the law requires." *United States v. Penagaricano–Soler,* 911 F.2d 833, 840 (1st Cir.1990), citing *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975). Thus, the government was required to prove "no more than a tacit understanding," *United States v. Pacheco–Ortiz,* 889 F.2d 301, 304 (1st Cir.1989), among appellant and one or more codefendants, to possess the heroin with intent to facilitate its distribution, *Passos–Paternina,* 918 F.2d at 986. Their tacit agreement to violate the law was demonstrated by a " 'development and a collocation of circumstances,' " *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *U.S. v. Rivera–Santiago,* 872 F.2d 1073, 1079 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); *Sanchez,* 917 F.2d at 610, established at trial, from which a reasonable factfinder could fairly infer that all six men were participating in the large scale heroin enterprise prior to the arrival of the search party.

*Identity of Informant*

Batista–Polanco advances two contentions in support of the claim that the district court erroneously refused to disclose the identity of the confidential informant. First, appellant asserts that it is an "inescapable conclusion" that the informant was at the apartment on the morning of April 26 and thus was in a position to testify as to Batista–Polanco's noninvolvement. Second, appellant contends that the informant was "the only person capable" of providing such testimony, which was precisely the evidence needed to overcome the damning circumstantial evidence. As appellant sees it, nondisclosure of the informant's identity was tantamount to a denial of the right to a fair trial.

■■■■ Whether a confidential informant's identity should be disclosed to the defense is a matter entrusted to the sound discretion of the trial court, *see United States v. Jackson,* 918 F.2d 236, 240 (1st Cir.1990); *United States v. Estrella,* 567 F.2d 1151, 1153 (1st Cir.1977), as determined in the "particular circumstances of each case" based on a "balancing [of] the public interest in protecting the flow of information against the individual's right to prepare his defense," *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957). We have held that the informer's privilege "must give way if 'the government's informer was the sole participant, other than the accused, in the transaction charged ... [and] was the only witness in a position to amplify or contradict the testimony of government witnesses.' " *United States v. Bibbey,* 735 F.2d 619, 621 (1st Cir.1984) (quoting *Roviaro,* 353 U.S. at 64, 77 S.Ct. at 630). Otherwise, disclosure is mandated only when the defendant is able to point to concrete circumstances sufficient to overcome the public interest in encouraging the flow of confidential information and the safety of confidential informants. *See Estrella,* 567 F.2d at 1153.

■■■■ Mere speculation as to the usefulness of an informant's testimony is insufficient to warrant disclosure. *United States v. Giry,* 818 F.2d 120, 130 (1st Cir. 1987); *United States v. Hemmer,* 729 F.2d 10, 15 (1st Cir.), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). When the informant is a mere "tipster," a conduit rather than a participant in the activity, *id.,* disclosure is required only in "exceptional cases," *United States v. Mar-*

*tinez,* 922 F.2d 914, 920–21 (1st Cir.1991), where it is "vital to a fair trial," *id.* at 921.

■ At least six persons, including Batista–Polanco, were in the apartment at the time of these arrests. Even if the informant was among those present, it cannot be contended that he was "the only person capable" of testifying to appellant's actions prior to the arrival of the search party. In any event, nothing in the informant's affidavit suggests that the informant was at the apartment where these arrests occurred on the morning of April 26. The affidavit does assert that the informant was at a different apartment, where heroin was present on a different day, but that information was irrelevant to the crimes with which appellant was charged. *Id.* at 921 (evidence that prior drug transactions were witnessed by confidential informant was insufficient to require disclosure of informant's identity, as appellants were prosecuted solely for later crimes).

■ The absence of a sufficient showing that the informant was at the apartment where appellant was arrested on the morning of April 26 strongly suggests that the informant was a mere "tipster." Since there was no evidence that the confidential informant was other than a mere "tipster," disclosure was not mandated as there has been no showing of "exceptional circumstances." *Id.* at 920–21. Thus, the assertion that the informant's testimony would have been either useful or necessary to appellant's case amounts to utter speculation.

*Voluntariness of Statement*

Appellant asserts that the statement concerning the sweater should have been suppressed on the ground that its admission into evidence violated his fifth amendment privilege against self-incrimination, as appellant did not knowingly and intelligently waive the right to remain silent. Appellant

also claims that the statement violated the fifth and fourteenth amendments, as it was obtained through trickery, without due process.[4]

■ The government concedes that appellant did not indicate a willingness to make a statement after the *Miranda* warning. Moreover, there is no record indication that the defendant invited or commenced the exchange with the officers. Rather, the evidence strongly suggests that the officers initiated a veiled interrogation aimed at eliciting an incriminating admission that appellant had been seated at the kitchen table where the heroin was packaged. Therefore, we must reiterate the admonition that "the police should know [that such tactics] are reasonably likely to elicit an incriminating response from the suspect" which may well constitute, as the Supreme Court has held, the functional equivalent of custodial interrogation for *Miranda* purposes. *Rhode Island v. Innis,* 446 U.S. 291, 300–301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *see also Arizona v. Mauro,* 481 U.S. 520, 526, 107 S.Ct. 1931, 1935, 95 L.Ed.2d 458 (1987) *(Miranda* applied to "functional equivalent" of interrogation).

■ As we are aware of no evidence that appellant knowingly and intelligently waived the right to remain silent, Baggs' inquiry may well have constituted custodial interrogation violative of *Miranda*'s procedural safeguards. Moreover, it is arguable that the conduct of the officers was such that the " 'will of the defendant [was] overborne so that the statement was not his free and voluntary act,' " *Bryant v. Vose,* 785 F.2d 364, 367–368 (1st Cir.1986), citing *Procunier v. Atchley,* 400 U.S. 446, 453, 91 S.Ct. 485, 489, 27 L.Ed.2d 524 (1971). We need not resolve either claim, however, as the record plainly demonstrates that any error in the admission of the challenged

---

**4.** The latter claim is not properly before us on appeal, since it was never raised in the district court. *See, e.g., Hernandez-Hernandez v. United States,* 904 F.2d 758, 763 (1st Cir.1990). The failure to raise the issue in the district court was a serious lapse, as is confirmed by the fact that neither the court nor the parties addressed or

considered the requirements of 18 U.S.C. § 3501, prescribing certain mandatory criteria for determining the voluntariness of inculpatory statements by a criminal defendant. Even if properly before us, however, the present claim cannot prevail.

statement was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

■ Statements induced in violation of *Miranda's* safeguards are appropriate for analysis under the "harmless beyond a reasonable doubt" test. *United States v. Kallevig,* 534 F.2d 411, 415 (1st Cir.1976); *see also Young v. Rees,* 707 F.2d 935, 935–936 (6th Cir.1983); *United States v. Baldwin,* 691 F.2d 718, 723 (5th Cir.1982). Moreover, although the Supreme Court has said that the admission of an involuntary statement mandates vacation of the conviction even though other admissible evidence in the case would have been sufficient to convict, it did so on the ground that reliable analysis under the "harmless beyond reasonable doubt" test is impracticable "where ... a coerced confession constitutes a part of the evidence *before the jury and a general verdict is returned* [as] no one can say what credit and weight the jury gave to the confession." *Payne v. Arkansas,* 356 U.S. 560, 568, 78 S.Ct. 844, 850, 2 L.Ed.2d 975 (1958) (emphasis added); *see also Jackson v. Denno,* 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964) (holding, on review of jury verdict, that conviction, "founded, in whole or in part, upon an involuntary confession," violates due process).[5]

There is no apparent precedential or practical obstacle to an application of the "harmless beyond reasonable doubt" analysis where the presiding judge, after a bench trial, makes special findings of fact, *see* Fed.R.Crim.P. 23(c), from which the reviewing court reliably can discern whether the verdict was based in whole or in part on an involuntary statement of the defendant. Unlike a general jury verdict, the special factfinding by the district court in the instant case plainly identified the particular factors on which these verdicts were based. The special findings of fact made by the district court contain no reference to the challenged admission. As we have concluded that the special findings of fact alone were entirely sufficient to establish appellant's guilt beyond a reasonable doubt, we are "able to declare [our] belief that [any alleged constitutional error] was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828.

*Sentencing Guidelines*

Appellant challenges two sentencing guideline determinations by the district court: (i) a two-point upward adjustment of the base offense level, pursuant to U.S.S.G. § 3C1.1, which was based on a finding that appellant testified untruthfully, and (ii) the denial of a two-point downward adjustment pursuant to U.S.S.G. § 3B1.2, which was based on a finding that appellant was not a "minor participant" in the offense.

*Obstruction of Justice*

■ Section 3C1.1 of the Sentencing Guidelines requires the sentencing court to increase the base offense level by two points "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the ... offense." The guideline commentary to U.S.S.G. § 3C1.1 provides that "testifying untruthfully ... concerning a material fact" may warrant an "obstruction of justice" adjustment, but that U.S.S.G. § 3C1.1 "is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt is not a basis for [its] application...." U.S.S.G. § 3C1.1, comment (nn. 1(c) & 3).

The district court raised Batista–Polanco's base offense level on the strength of its finding that he "testified untruthfully ... concerning a material fact," *i.e.,* the length of time he was at the apartment on the morning of April 26. Appellant contends that an upward adjustment under U.S.S.G. § 3C1.1 in these circumstances

---

5. It is not altogether clear that the Supreme Court continues to hew to its position in *Payne* and *Denno. See Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (applying "harmless beyond reasonable doubt" analysis to allegedly involuntary confession); *see also United States v. Murphy,* 763 F.2d 202, 208 & n. 8 (6th Cir.1985) (discussing apparent changes in Supreme Court treatment of issue and applying "harmless beyond reasonable doubt" analysis to involuntary statements).

bids fair to chill defendants' exercise of their right to testify in their own defense and serves to punish defendants for refusing to admit guilt, contrary to the guideline commentary. *See* U.S.S.G. § 3C1.1, comment (n. 3). Appellant additionally disputes the sufficiency of the factual basis for the district court finding that he testified falsely.

The proper exercise of a criminal defendant's constitutional right to deny guilt, *see* Fed.R.Crim.P. 11(a), or to testify, can never support a sentence enhancement under U.S.S.G. § 3C1.1. Nonetheless, the authorized procedure for asserting innocence in a criminal proceeding is the tender of an unsworn "not guilty" plea. Fed.R.Crim.P. 11(a). *See also United States v. Acosta–Cazares*, 878 F.2d 945, 953 (6th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). Furthermore, no criminal defendant enjoys a constitutional privilege to testify falsely. *United States v. Grayson*, 438 U.S. 41, 54, 98 S.Ct. 2610, 2617–18, 57 L.Ed.2d 582 (1978). Accordingly, like every other court of appeals which has addressed the issue, we hold that the enhancement of a criminal defendant's sentence pursuant to U.S.S.G. § 3C1.1 for attempting to obstruct justice by testifying falsely in his own defense implicates no constitutional right. *See United States v. Matos*, 907 F.2d 274, 276 (2d Cir.1990); *United States v. Wallace*, 904 F.2d 603, 604–605 (11th Cir.1990); *United States v. Beaulieu*, 900 F.2d 1537, 1539 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3252, .111 L.Ed.2d 762 (1990); *United States v. Wagner*, 884 F.2d 1090, 1098 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990); *Acosta–Cazares*, 878 F.2d at 953.

Appellant contends that the court erroneously found that he testified falsely. With "due regard to the opportunity of the district court to judge the credibility of witnesses," 18 U.S.C. § 3742(e), we review the challenged finding for "clear error," *Matos*, 907 F.2d at 276; *Wallace*, 904 F.2d at 605; *Beaulieu*, 900 F.2d at 1540; *United*

States v. O'Meara*, 895 F.2d 1216, 1220 (8th Cir.1990) (all holding that § 3C1.1 determination as to whether defendant testified untruthfully presents issue of fact subject to "clear error" review).

Batista–Polanco contends that the district court did not comply with other commentary to U.S.S.G. § 3C1.1, which provides that "suspect testimony and statements should be evaluated in a light most favorable to the defendant." U.S.S.G. § 3C1.1, comment (n. 2). As the district court correctly observed, however, comment 2 does not require that all conflicts in testimony be resolved in favor of the defendant, but "simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Franco–Torres*, 869 F.2d 797, 801 (5th Cir.1989); *see also Matos*, 907 F.2d at 276; *Wallace*, 904 F.2d at 605; *Beaulieu*, 900 F.2d at 1541. Batista–Polanco testified that he had been at the apartment for only forty-five minutes by the time the search party arrived; on rebuttal, the surveillant testified that Batista–Polanco did not enter the building between 8:15 and 10:30 that morning. After weighing the credibility of these two witnesses, the trial court formed the firm belief that Batista–Polanco had testified falsely as to a material fact. Due deference to the district court's credibility determination, based on its personal observation and evaluation of the witnesses, compels our conclusion that Batista–Polanco's claim is meritless.

*Role in Offense*

 Finally, the district court committed no error in determining that Batista–Polanco was more than a "minor participant" in the heroin conspiracy, hence that there was no basis for a two-point downward adjustment pursuant to U.S.S.G. § 3B1.2(b).[6] *See United States v. Paz Uribe*, 891 F.2d 396, 399 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990); *United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989)

---

**6.** The court is directed to decrease the base offense level by two points "[i]f the defendant

was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b).

(both holding that § 3B1.2 determination as to whether defendant was "minor participant" requires "clear error" review). A "minor participant" is one "who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, comment (backg'd). The circumstantial evidence before the district court was sufficient to establish that Batista–Polanco, *one of six* men who were present for at least two hours and fifteen minutes on the morning of April 26 in a small apartment with heroin milling and packaging paraphernalia and several thousand packets of heroin, occupied one of six seats at the kitchen table where the packaging operation took place.[7] The district court correctly found that Batista–Polanco was not substantially less culpable than the average participant.

*Affirmed.*

---

7. *See supra* note 3 & accompanying text.